(116 So. 334)

## BIRMINGHAM STOVE & RANGE CO. v. VANDERFORD. (6 Div. 954.)

Supreme Court of Alabama. March 29, 1928.

**1. Automobiles ⬅238(1)—Complaint alleging collision occurred at or near intersection of Clarendon avenue and Twenty-Fourth street, in certain city, sufficiently indicated place of alleged injury.**

In action for injuries, allegation in complaint that plaintiff while proceeding along public highway of city of Bessemer, to wit, Clarendon avenue, collided with agent of defendant at or near intersection of Clarendon avenue and Twenty-Fourth street, sufficiently indicated place of alleged injury.

**2. Automobiles ⬅238(3)—Complaint alleging that defendant's servant negligently operated truck at time and place of collision held sufficient as against demurrer assigned for simple negligence.**

Allegation, in complaint for injuries from collision of motorcycle with truck, that the servant of defendant "negligently operated" the truck at time and place of collision, does not offend rule declared for good pleading in complaints and was sufficient as against demurrer for simple negligence.

**3. Negligence ⬅136(9) — Question of negligence is for jury, where facts are such that reasonable men may fairly differ.**

When given state of facts is such that reasonable men may fairly differ upon question as to whether there was negligence or not, determination of matter is for jury, and it is only when facts are such that all reasonable men must draw same conclusion therefrom that question is one of law for court.

**4. Automobiles ⬅171(4)—Vehicle first at intersection or crossing without negligence has right of way.**

The vehicle first at an intersection or crossing without negligence has the right of way, to be exercised with due regard to others and the conditions that obtain.

**5. Automobiles ⬅243(16)—Rule of road, conduct of parties, speed, etc., held material facts for jury as to cause of injury from collision of motorcycle and truck at intersection.**

In action for injuries from collision of motorcycle and truck at intersection, conduct of parties, rule of road, speed they approached crossing, whether respective machines were under control, etc., *held* material facts for jury as shedding light upon proximate or contributing cause of injury.

**6. Negligence ⬅72—One suddenly imperiled by wrongful, unexpected act of another need not exercise care of prudent man not so circumstanced.**

If an actor is suddenly imperiled by the wrong, unwarned, and unexpected act of another, he is not required to exercise all the presence of mind of a prudent and careful man not so circumstanced.

**7. Negligence ⬅72—One wrongfully and voluntarily putting himself in dangerous position is not entitled to benefit of rule absolving him in case of sudden peril.**

Rule that one suddenly imperiled by wrongful act of another need not exercise presence of mind of prudent man not so circumstanced does not apply to one who wrongfully and voluntarily puts himself in such dangerous position.

**8. Automobiles ⬅245(91) — Alleged further subsequent negligence of driver of truck after observing plaintiff's approach on motorcycle was for jury's consideration.**

In action for injuries from collision of motorcycle and truck, subsequent negligence vel non of driver of truck, after observing plaintiff's approach, in turning and suddenly stopping, as testified to by plaintiff, was for consideration of jury.

**9. Evidence ⬅472(4)—Objection to question whether driver had truck under control was properly sustained, since it was material inference for jury to draw from the facts.**

In action for injuries from collision of motorcycle and truck, objection to question to plaintiff as to whether truck driver had truck under control was properly sustained, since it was a material inference for jury to draw from facts.

**10. Negligence ⬅119(6)—Simple negligence count includes issue of negligence after discovery of peril.**

A count for simple negligence includes the issue of negligence after discovery of peril.

**11. Automobiles ⬅9—General statutory rule as to right of way of vehicle approaching intersection on the right is subject to municipal ordinance regulating traffic (Code 1923, § 6266).**

General rule of Code 1923, § 6266, that at intersections of public highway vehicle approaching on right has right of way, is subject to reasonable municipal ordinance regulating traffic in congested areas.

**12. Trial ⬅260(1)—Requested charges covered by given charges were properly refused.**

Defendant's requested charges sufficiently covered by defendant's given charges were properly refused.

**13. Appeal and error ⬅1050(1)—Overruling objection to questions whether truck driver gave any warning that he was going to stop, or whether plaintiff ever got on left side of road, held not reversible error.**

In action for injuries from collision of motorcycle and truck, overruling objections to questions as to whether truck driver gave any warning that he was going to stop, and as to whether plaintiff ever got on left side of road, was not reversible error.

**14. Evidence ⬅472(1)—Questions tending to invade province of jury or draw inferences of fact for jury held properly excluded.**

In action for injuries from collision of plaintiff's motorcycle and truck, cross-examination of plaintiff as to his duty as officer of city to arrest speed violators, as to his own violation of

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

-speed law, and as to whether truck driver had truck under control, was properly excluded, as questions tended to invade province of jury or draw inferences of fact for jury.

**15. Evidence ⬤⟿471(1)—Nonexpert should give details or facts and leave inferences to jury.**

A nonexpert witness should give the details, circumstances, and facts, and leave the reasonable inferences to the jury.

**16. Evidence ⬤⟿471(19)—Admission of testimony of nonexpert witness as to condition of street at place of collision, based on recent examination, held error.**

Testimony of nonexpert witness, in answer to question whether there was anything wrong with any part of street which was scene of collision, that east side of street was kind of low, based on his recent examination of locus in quo, was error, as witness should have stated the facts and permitted jury to draw the inference.

**17. Evidence ⬤⟿150—Admission of testimony as to points of visibility to and from corner which was scene of collision, based on experiments long after accident, held error.**

In action for injuries from collision at intersection, admission of testimony of nonexpert witness as to points of visibility to and from corner, based on experiment some seven and eight months later than date of accident, held error.

Appeal from Circuit Court, Jefferson County, Bessemer Division; J. C. B. Gwin, Judge.

Action for damages by J. A. Vanderford against the Birmingham Stove & Range Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count A is as follows:

"Count A. Plaintiff claims of defendant the sum of $25,000 as damages for that on, to wit, the 26th day of June, 1926, plaintiff was in the employment of the city of Bessemer, as policeman, and as such policeman it was his duty to go to various parts of the city of Bessemer, and on said date he had gone to Thirty-Second street, in said city of Bessemer, on a motorcycle belonging to the city of Bessemer, and on said date, while he was proceeding along the public highway of the city of Bessemer, to wit, Clarendon avenue, on said business for the city, the motorcycle on which he was riding came in contact with an automobile truck operated by a servant, agent, or employee of defendant, acting within the line and scope of the duty of his employment, as such agent of the defendant, the collision occurring at or near the intersection of Clarendon avenue and Twenty-Fourth street in the city of Bessemer, and as the result of said collision, plaintiff's body was bruised, mutilated, and injured; he was bruised and injured in his face, head, and other parts of his body; his eye was greatly bruised and injured. His knees were seriously bruised and injured; his ribs were broken, and he was seriously bruised internally; was made sick and sore; has suffered and is suffering excruciating mental pain and anguish, and will be disabled and incapacitated for the remainder of his life; his health and physical stamina were permanently impaired, and he has been permanently injured in the various parts of his body, hence this suit.

"Plaintiff further avers that all of his injuries and damages above set forth were proximately caused by the negligence of the servant, agent, or employee of defendant then and there in charge of said truck for the defendant and acting within the line and scope of his duty in the employment of the defendant, in this, that said servant, agent, or employee negligently operated said automobile truck at the time and place of collision."

The defendant demurred to said count of the complaint on the following grounds:

"1. The complaint is vague, indefinite, and uncertain.

"2. The negligence of the defendant is not set forth with sufficient certainty.

"3. It is not averred wherein the defendant owed the plaintiff any duty or care.

"4. There is no causal connection beween the injury and the alleged negligence of the defendant.

"5. The place where the alleged injury is said to have occurred is not described with sufficient certainty.

"6. From aught that appears from the complaint, plaintiff's injury was caused by his own negligence.

"(a) No facts are averred which show a duty on this defendant not to allow plaintiff to collide with said truck.

"(b) The duty alleged is greater than that imposed by law.

"(c) It does not appear that said servant was acting within the line or scope of his employment by the defendant.

"(d) It does not appear with sufficient certainty in what the negligence consisted.

"(e) It does not appear that said injuries were the proximate result of the negligence complained of.

"(f) Said count attempts to state a wanton injury and is not sufficient in that respect.

"(g) Said count is repugnant and inconsistent, in that, same attempts to state a case of wanton injury and states only a negligent injury."

Charges G and H, refused to defendant, are as follows:

"G. At intersections of public highways, the vehicle approaching on the right of the other vehicle has the right of way.

"H. Under the evidence in this case you should find that defendant's truck approached the intersection of Clarendon avenue and Twenty-Fourth street on the right of plaintiff's motorcycle, and I charge you that when such is the case, the vehicle so approaching on the right has the right of way over the crossing."

Nesbit & Sadler, of Birmingham, and Huey & Welch and W. G. Stone, all of Bessemer, for appellant.

The defendant's truck was standing still at the time of the collision. No act on the part of defendant was in any manner the proximate cause of the collision. Defendant was

guilty of no actionable negligence, but plaintiff was himself guilty of negligence proximately causing or contributing to the collision. The affirmative charge for defendant should have been given. Lessman v. West, 20 Ala. App. 289, 101 So. 515; Hamilton v. B. R. L. & P. Co., 198 Ala. 630, 73 So. 950; Hill v. Condon, 14 Ala. App. 332, 70 So. 208; Ford v. Hankins, 209 Ala. 202, 96 So. 349; Acts 1911, p. 641, § 19; Watts v. Montgomery Tr. Co., 175 Ala. 102, 57 So. 471; Morrison v. Clark, 196 Ala. 670, 72 So. 305; Karpeles v. City Ice Del. Co., 198 Ala. 449, 73 So. 642; Overton v. Bush, 2 Ala. App. 623, 56 So. 852; Code 1923, §§ 6265, 6266. Defendant's driver approached the intersection from plaintiff's right. Plaintiff approached the intersection to defendant's driver's left. Defendant's driver was first at the crossing. Charges G and H should have been given. Code 1923, § 6266; Babbitt's Motor Vehicle Law (2d Ed.) § 382. If plaintiff was exceeding the speed limit fixed by ordinance, he could not recover. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; B. R. L. & P. Co. v. Bynum, 139 Ala. 389, 36 So. 736; Karpeles v. City Ice Del Co., supra; B. R. L. & P. Co. v. Hamilton, supra. It was error to permit the asking of leading questions. Smith v. Kress & Co., 210 Ala. 436, 98 So. 378. Whether there was anything wrong with any part of the street called for a conclusion of the witness, and should not have been allowed. City of Anniston v. Ivey, 151 Ala. 392, 44 So. 48; N. C. & St. L. v. Yarbrough, 194 Ala. 162, 69 So. 582; Brown v. Mobile Elec. Co., 207 Ala. 61, 91 So. 802. Experiments made out of court, when the other party to the litigation is not present and when the conditions are not shown to be the same as on the occasion of the accident, are not admissible in evidence. A. G. S. R. Co. v. Burgess, 114 Ala. 587, 22 So. 169; Spelce v. State, 20 Ala. App. 412, 103 So. 694.

Mathews & Mathews, of Bessemer, and Black & Fort, of Birmingham, for appellee.

A case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish. Gardner v. Mich. Cent. R. Co., 150 U. S. 349, 14 S. Ct. 140, 37 L. Ed. 1107; Kreigh v. Westinghouse & Co., 214 U. S. 249, 29 S. Ct. 619, 53 L. Ed. 984; Welsh v. Barber Asphalt Co., 167 F. 465, 93 C. C. A. 101; Carstens Pkg. Co. v. Swinney, 186 F. 50, 108 C. C. A. 152; McCormack Co. v. Lowe, 151 Ala. 315, 44 So. 47; Garren v. Fields, 131 Ala. 304, 30 So. 775; Columbia M. & E. Co. v. Bingham, 169 Ala. 554, 53 So. 995; Boozer v. Jones, 169 Ala. 481, 53 So. 1018. A person who is suddenly put in peril by the wrong of another is not required to exercise all of the presence of mind of a prudent, careful man; the law makes allowance for them, and leaves the circumstances of their conduct to the jury. L.

& N. R. Co. v. Thornton, 117 Ala. 282, 23 So. 778; R. & D. R. Co. v. Farmer, 97 Ala. 141, 12 So. 86. It is immaterial whether plaintiff was guilty or not; if defendant was guilty of subsequent negligence that proximately caused the injury, he would be entitled to recover. Thomas Furn. Co. v. Carroll, 204 Ala. 263, 85 So. 455; T. C. I. & R. Co. v. Gandy, 160 Ala. 597, 49 So. 369; Southern R. Co. v. Gantt, 210 Ala. 383, 98 So. 192; Miles v. Hines, 205 Ala. 83, 87 So. 837; L. & N. R. Co. v. Calvert, 172 Ala. 597, 55 So. 812. Where negligence by defendant, after discovery of peril, appears, negligence of plaintiff not subsequent to his discovery of his own peril is not in law contributing cause of injury. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

THOMAS, J. [1, 2] The trial was had upon count A, added by way of amendment. The place of the alleged injury is sufficiently indicated. Gray v. Cooper, 216 Ala. 684, 114 So. 139; Tillery v. Walker, 216 Ala. 676, 114 So. 137; Ruffin C. & T. Co. v. Rich, 214 Ala. 633, 108 So. 596. The averment that said servant, agent, or employee negligently operated said automobile truck at the time and place of collision does not offend the rule declared for good pleading in complaints. Dwight Mfg. Co. v. Holmes, 198 Ala. 590, 73 So. 933; Tennessee Coal, Iron & R. Co. v. Moore, 194 Ala. 134, 69 So. 540. There was no error in overruling demurrer assigned to count A, for simple negligence.

[3] Affirmative instructions A, 1, and 2 were requested, and being refused are assigned as error. The authorities are collected in McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135, as to when affirmative instruction should be given. And a cause should not be withdrawn from the jury unless the conclusion follows, as a matter of law, against recovery upon any reasonable view which can be taken of the facts which the evidence tends to establish. A statement of the rule, approved by this court, is, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; and it "is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, 489. This statement of the rule has been approved and followed in this jurisdiction. Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 So. 77; Tenn. Mill & Feed Co. v. Giles, 211 Ala. 44, 99 So. 84; Birmingham So. R. Co. v. Harrison, 203 Ala. 284, 291, 82 So. 534; White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479. Affirmative instructions were properly refused.

[4, 5] The conduct of the parties operating their machines in approach and at the

intersection of the thoroughfares was subject to consideration by the jury. The vehicle first at the intersection or crossing, without negligence, has the right of way, to be exercised with a due regard to others and the conditions that obtain. Whatley v. Nesbitt, 204 Ala. 334, 85 So. 550. The rule of the road, and passage to the right, the precedence given the respective vehicles duly passing, the sudden stopping, if such was the case, with or without signals, whether the drivers slowed down, or at what speed they approached the crossing, and whether with respective machines under control, the signals of approach and for stopping, whether duly given, respective rates of speed under the ordinances, points of visibility of each machine, as they approached the corner, whether each driver saw the other, if so, when and where, as he proceeded immediately before the collision, were material facts for the jury as shedding light upon the proximate or contributing cause of the injury. L. Hammel Dry Goods Co. v. Hinton, 216 Ala. 127, 112 So. 638; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13. In each case the actions of the parties or agents are to be judged by the certain circumstances and material facts entering therein as a part of the res gestæ or quo modo of the injury.

[6, 7] It should be further observed that if an actor is suddenly imperiled by the wrong, unwarned, and unexpected act of another, he is not required to exercise all the presence of mind of a prudent and careful man not so circumstanced. The law makes allowances for them, and leaves the circumstances of their conduct to the jury. Alabama Co. v. Sanders, 202 Ala. 295, 297, 80 So. 360; Richmond & Danville Ry. Co. v. Farmer, 97 Ala. 141, 12 So. 86; Louisville & N. R. R. Co. v. Thornton, 117 Ala. 274, 282, 23 So. 778; Cook v. Central R. R. & Banking Co., 67 Ala. 533. This rule does not apply to one who wrongfully and voluntarily puts himself in such a dangerous position. However, ordinarily, such questions are held to be for the jury. Alabama Co. v. Sanders, 202 Ala. 295, 297, 80 So. 360; McCauley v. Tennessee Coal, Iron & R. Co., 93 Ala. 357, 9 So. 611; Birmingham Ry. Co. v. Fox, 174 Ala. 657, 56 So. 1013.

[8] The further question of subsequent negligence vel non of the driver of the truck, after observing plaintiff's approach, in turning as he did into the street and suddenly stopping where and as he did (according to plaintiff's evidence), was for consideration by the jury. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Louisville & N. R. R. Co. v. Calvert, Adm'r, 172 Ala. 597, 55 So. 812; Louisville & N. R. R. Co. v. Jenkins, 196 Ala. 136, 142, 72 So. 68; Shirley v. Southern Ry. Co., 198 Ala. 102, 73 So. 430; Alabama Great Southern R. Co. v. Sanders, 203 Ala. 57, 82 So. 17; Southern Ry. Co. v. Gantt, 210 Ala. 383, 98 So. 192; Tenn. Mill & F. Co. v. Giles, 211 Ala. 44, 99 So. 84.

[9] Plaintiff, as a witness, testified, among other things, that he passed some cars on Clarendon avenue and then blew his whistle; that the "traffic was very heavy there" in the use of that street; that when he first saw the truck, he (plaintiff) was driving about 30 miles an hour, and began applying brakes, and "thought" the driver of the truck "was going on"; that he was cutting the corner, and "stopped on me (witness)" without warning, and (I) "was too near on him to stop" the motorcycle; that witness was driving on the right side of the road except when passing "those cars," and then came "in the middle of the street"; that he saw the driver of the truck "pull out of Twenty-Fourth street into Clarendon avenue, and he was looking right directly toward me (plaintiff) when he pulled in * * * by the left corner there angling across the street." The plaintiff on cross-examination stated that when he passed the cars it was at the rate of "about 30 miles an hour" and the cars passed were going 20 miles; that the speed limit of Bessemer is 18 miles an hour. Witness stated that as he got by the cars he was 75 or 100 feet from the intersection of Twenty-Fourth street and "saw the truck" coming out of said street into Clarendon avenue "bearing in close to that corner" and plaintiff began "to slow up"— commenced to put on brakes—"expecting" the driver of the truck "to pull on," and when in 25 feet of him the latter "reached and caught his emergency" at a time when witness guessed he "was running 20 miles an hour." Witness "then cut off the gas" and put on his "emergency to stop" the best he could; that running 20 miles an hour should have 30 feet in which to stop; that the truck was not going very fast—"just pulled in," at about 12 miles an hour and stopped. The question was asked, "He had his truck under thorough control, didn't he?" to which plaintiff's objection was sustained and defendant excepted. In this there was no error. It was a material inference for the jury to draw from the facts.

The plaintiff further stated on cross-examination, as follows:

"You cannot stand at that third telegraph pole from that corner and see down by that house on the corner on the west side there on the northwest corner of that intersection and see a vehicle coming east on Twenty-Fourth street 75 feet before it gets to Clarendon avenue, for I have looked, and I am sure that you can't do that. You can see maybe 25 feet down in the street there west of that intersection from the third telegraph pole up there, and not over 50 feet at the outside. At that time there was a tree between the corner and that house there; a small, green tree, large enough to knock your view off all right. That tree is there now. * * *

"I haven't any idea how far up those telegraph posts are, for I didn't notice them, but I know about where I was when I passed the cars. Assuming that the posts are 100 feet apart,

when I passed those cars I was something like 150 or 200 feet from the intersection."

Plaintiff then offered as a witness Mr. Clark, who said, among other things, the following:

"Clarendon avenue is 30 feet all the way across, and the gutter is 56 inches including both sides; that is, 2 feet and 4 inches on both sides. * * * I am very familiar with Twenty-Fourth street. * * * It is in the same condition now as it was when this accident happened; there is no difference in it to-day."

"Whereupon witness was, by the plaintiff's attorney, asked the following question:

" 'Q. Was there anything wrong with any part of the street?'

"Thereupon the defendant objected to said question on the grounds that it called for a conclusion of the witness, invaded the province of the jury, and called for a mere opinion.

"The court overruled said objection, and to this action of the court the defendant there and then, in open court, duly reserved an exception.

" 'A. Well, the east side of it is kind of low.' * * *

"The east side of Twenty-Fourth street is over there next to those negro houses, or the north side of the street. * * *

" 'Q. Does it show any signs there of being traveled there any more than other part of the street, or did it at this time?' * * * 'A. No, sir.' * * *

"There is a telephone post right at the corner, and the next back here, and the next back up here. I went to the first telephone post and let Mr. Black stand down here to see if I could see him. * * *

" 'Q. How far was it?' * * * 'A. Eighteen feet.' * * *

"I went up to the second telephone post and looked down there. * * *

" 'Q. How far did you look at me standing down there at that place and then come down and measure?' * * * 'A. One of them was 18, and the other was 24.' " * * *

"I mean 18 and 24 feet. There is a little thorn tree right there in the corner; it would be right in here at that nigger house, where the dot is on the diagram. That tree is not green now, but was last summer in June."

There were objections and exceptions; motions to exclude were overruled and exceptions to such action of the court taken. To these rulings we will advert later in the opinion.

Defendant's driver of the truck said in coming out of Twenty-Fourth street into Clarendon avenue he did not "stop dead still," but "slowed down to second gear," and was averaging 5 miles an hour; after he passed the house on the corner he could see along that avenue in the direction from which plaintiff approached, and saw the motorcycle, and reached the intersection before the latter did; the motorcycle was proceeding at the rate of 25 miles per hour when he struck the truck driven by witness; that the motorcycle was about 120 feet away when the truck was stopped; that the plaintiff "came straight until he saw" witness and then "made a left

dip and went back to the right"; that so far as witness "could tell there was no slowing down in his speed at all until he struck" the truck of defendant; that witness had stopped when his truck was struck by plaintiff; that witness went around the intersection of the street; that the street was in excellent condition on both sides. The diagram was adverted to by witness saying:

"I went in Twenty-Fourth street to right here (indicating on diagram), right in the center of the intersection of the street right there the front of the truck was, and the back end or rear end of the truck was about like that (indicating on diagram). I didn't never get up in this street here at all."

Witness testified further as follows:

" I saw him coming at a fast rate of speed when he was about 120 feet up there, and he was coming down on the right-hand side. When I got here, with the back of my truck right here, I stopped the truck dead still, and was stopped about eight seconds when he hit me. He wasn't 120 feet away when I stopped, but I reckon it was something like about 90 feet. I stopped dead still, but I left a right of way for him. The front of my truck was right in the center of the intersection when I stopped, I am sure of that, and the truck is 24 feet long, and it was turned back some. He hit me at the left rear corner, right at the corner. I think there is 10 feet of body behind that rear wheel, and he hit in about the center of that; that is, in the center behind the rear wheel and the end of the body."

[10] Many charges of contributory negligence, requested in violation of city ordinances as to speed and signal, leave out of consideration the duty or negligence of defendant's driver, after discovery of the peril. The simple negligence count included the issue of negligence after discovery of peril. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

[11, 12] Defendant's refused charges H and G were rested upon provisions of the Statute, § 6266. This general rule is subject to reasonable municipal ordinances regulating traffic in congested areas. Hammel Dry Goods Co. v. Hinton, 216 Ala. 127, 112 So. 638. However, the refused charges are sufficiently covered by defendant's given charges E and F.

[13] Recent observations on questions with leading tendencies are contained in Smith v. S. H. Kress & Co., 210 Ala. 436, 98 So. 378. However, we do not find reversible error in rulings against defendant's objections to questions as: "Did he give any warning of any kind that he was going to stop?" or, "Did you, or did you not, ever get on the left side of the road?"

[14] There was no error in declining defendant's attempted cross-examination of plaintiff to the effect that it was his duty as an officer of the city to arrest one caught "driving along there (the public highway) in excess of 18 miles an hour," or if while he was running 30 miles an hour, he "knew it

was a violation of the law to run over 18," and if "he had his truck under thorough control, didn't he?" Such questions tended to invade the province of the jury or draw inferences of fact for the jury.

[15, 16] We have indicated the evidence and several rulings on objections and motions to exclude to which exceptions were reserved, as to the answers of the witness Clark. He should have stated the facts and permitted the jury to draw the inference as to whether there was anything wrong with any part of the street. The rule is well understood that a nonexpert witness should give the details, circumstances, or facts, and leave the reasonable inferences to the jury. Brown v. Mobile Elec. Co., 207 Ala. 61, 91 So. 802; Nashville, C. & St. L. R. R. Co. v. Yarbrough, 194 Ala. 162, 170, 69 So. 582; Weller & Co. v. Camp, 169 Ala. 275, 52 So. 929, 28 L. R. A. (N. S.) 1106; City of Anniston v. Ivey, 151 Ala. 392, 44 So. 48. The physical conditions of such approaches to and on the crossing at the time when and where the collision occurred had an influence upon or illustrated the respective duties of the driver of the truck in proceeding upon the corner as he did to proceed north into and along the Clarendon public thoroughfare. And the inference of fact of whether there was anything wrong with any part of the street was drawn by the witness who, according to his evidence, had recently examined that locus in quo. In this there was error, had not defendant's agent, as a witness, used the same language and expressed like opinion.

[17] The further examination of that witness as to experiments made on the day before the trial as to points of visibility to and from the corner was error; that is, with reference to the certain measurements made of the street and at what point witness could be seen by the other party standing in the street. In Alabama G. S. R. Co. v. Burgess, 114 Ala. 587, 22 So. 169, the rule was declared in an action for injury received by a boy while he and a little girl were walking along the railroad track and the former was struck by the train. It was there thought to be important to ascertain, as a matter of fact, how far these children could be seen and recognized in the direction from whence the train proceeded; and it was held that the witnesses were improperly permitted to testify to experiments, as to points of visibility, made some time after the injury and by placing plaintiff and a little girl at the place of the injury and observing the distance on the track in the direction from which the train proceeded, where they could be observed and recognized as children. The ground of reversal was rested on the fact that the "conditions are too variant" to aid the jury in determining the question of whether the engineer exercised reasonable care; and such was the effect after making a due allowance

for such differences. It was further declared:

"Such evidence will not furnish, or aid in furnishing, a safe guide to the jury in the determination of the question whether the engineer exercised reasonable care to prevent the injury, after he discovered the plaintiff's peril, or even before such discovery, if that were an issue in the cause. Conditions are too variant. Tesney v. State, 77 Ala. 33."

The following cases, acting upon the rule stated in the Burgess Case, supra, applied the same by excluding the evidence of the experiment made after the fact: Tesney v. State, 77 Ala. 33; Miller v. State, 107 Ala. 40, 19 So. 37, experiments were "firing at a similar coat to that worn by deceased," and the distance at which a pistol may scorch or powder burn. To the same effect is Butler v. State, 16 Ala. App. 234, 77 So. 72. In Evans v. State, 109 Ala. 11, 19 So. 535, the experiment was to ascertain the size of hole the bullet of a pistol would make in a plank. Alabama, G. S. R. Co. v. Collier, 112 Ala. 681, 14 So. 327; was an experiment showing that extinguishers exploding or breaking would or would not injure clothing; Mayer v. Thompson-Hutchison Bldg. Co., 116 Ala. 634, 22 So. 859, the dropping of a brick from a cornice and place of impact; Decatur Car Wheel Mfg. Co. v. Mehaffey, Adm'r, 128 Ala. 242, 255, 29 So. 646, the swinging or oscillation of scaffolding; Sherrill v. State, 138 Ala. 3, 35 So. 129, was as to a point of visibility from the place of the homicide to a point where witnesses said they stood and saw; and in Birmingham Ry., Light & Power Co. v. Saxon, 179 Ala. 136, 59 So. 584, the motorman's testimony, as to the method of stopping a car and the illustration with his hands of the modus operandi to check or stop the car, was held not offensive to the rule of the Burgess Case, 114 Ala. 596, 22 So. 169. In Birmingham R. Light & Power Co. v. Hayes, 153 Ala. 178, 44 So. 1032, it was held there was no error in sustaining plaintiff's objection to the question of how long it took a car going 15 or 20 miles an hour to run 25 or 30 feet, which presented a mathematical question.

In the instant case the examination of the witness Clark proceeded as we have indicated. This experiment was some seven or eight months later than the date of the accident and had for one of its purposes to see "if I (witness) could see him," and to locate the distance in which the parties were visible to and from the corner, and to get the exact distances between or with reference to the telephone poles spoken of by plaintiff as a witness. It is true, witness stated the street and its surrounding were unchanged; the tree was mentioned and its change of foliage or the time of the year. When the whole examination of witness Clark is considered, as we have done in the light of the testimony of plaintiff and defendant, we are of opinion

that error intervened in drawing conclusions for the jury as to anything being wrong with the street at the time of the injury, and as to the points or distances of the range of vision to and from that of the locus in quo of the injury. It may have been that the exact location of the two automobiles on the right side of Clarendon avenue, as the motorcycle proceeded, and the references to the house on that corner and the tree with foliage thereon, materially affected the visibility of said drivers, influenced or entered into the action of said parties, and had important bearing upon the approaches made—the rounding of the corner, the slowing down and stopping of the truck when the motorcycle was seen to approach, and the rate at which the motorcycle proceeded to the point of impact with the truck when seen on the crossing, having regard for the distance in which the motorcycle may be stopped at the speed it approached the crossing. Such evidence had material bearing on the questions of negligence—initial, contributory, and subsequent. These inferences should have been drawn by the jury and not by the witness Clark, as was done by experiment. The evidence of witness Clark to which objection was duly interposed, overruled, and exception reserved, had the tendency to confuse the statements of fact made by plaintiff and his witness on the one hand and the driver of the truck on the other.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.